UNITED STATES *v.* GOOD NEIGHBOR IMPORTS, INC. (No. 4502) [1]

United States Court of Customs and Patent Appeals, November 5, 1945

*Paul P. Rao,* Assistant Attorney General (*Alfred A. Taylor, Jr.,* special attorney, of counsel), for the United States.

No appearance for appellee.

[Oral argument October 3, 1945, by Mr. Taylor, Jr.]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

[1] C. A. D. 321.

O'Connell, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, C. D. 892, overruling the action of the Collector of Customs at the port of New York in assessing a duty of 60 per centum ad valorem on certain leather boxes classified by him as smokers' articles not specially provided for under paragraph 1552 of the Tariff Act of 1930 and sustaining the importer's protest on the ground that the merchandise was properly dutiable as cigarette cases at 35 per centum ad valorem under paragraph 1552 of the Tariff Act of 1930 as modified by the trade agreement with the United Kingdom, T. D. 49753.

Paragraph 1552, so far as pertinent, reads:

PAR. 1552. Pipes and smokers' articles: * * * and all smokers' articles whatsoever, * * * not specially provided for, of whatever material composed, except china, porcelain, parian, bisque, earthenware, or stoneware, 60 per centum ad valorem; * * *

Paragraph 1552 as modified by the trade agreement with the United Kingdom, *supra,* so far as pertinent, reads:

Cigar and Cigarette cases, * * * not specially provided for, wholly or in chief value of leather—35% ad val.

No testimony was offered by either party and the issue was submitted upon a stipulation that the articles imported are composed wholly or in chief value of leather. The merchandise, represented by Exhibit 1, is concisely described in the opinion of the court below as follows:

The exhibit is in the form of a box, 10⅞ inches long, 3⅞ inches wide, and 1¾ inches high, having 4 receptacles on the inside, each one about the size of a pack of cigarettes. Each receptacle has a hinged cover, the words appearing on the various covers being "Camel," "Lucky Strike," "Chesterfield," and "Kool," respectively. The exhibit is covered and lined with leather. From the appearance of the exhibit, it is designed to be placed on a table or desk for the purpose of holding cigarettes.

Appellant contends that the imported merchandise does not come within the meaning of the term, "cigarette cases," that these words in their usual, accepted, and common meaning provide for a class of merchandise designed solely to be carried on or about the person, and that "smokers' articles," such as Exhibit 1, designed to be placed on a table or desk for the purpose of holding cigarettes, are excluded from the benefits of the lower rate of duty provided for in the trade agreement under consideration.

Appellant urges further that the meaning of "cigarette cases" is ambiguous and doubtful and in the interpretation of that term, the court below erred in refusing to give effect to the "Digests of Trade Data With Respect To Products On Which Concessions Were Granted By The United States" published by the United States Tariff Com-

mission concerning the "Trade Agreement Between the United States and the United Kingdom," 1938, volume VIII, schedule 15, page 224.

No doubt is professed here as to the meaning of the word "cigarette." The meaning of "case" is defined in Webster's New International Dictionary, Second Edition, 1939, as:

*case, n.* 1. A box, sheath, or covering of any kind; as, a *case* for holding goods; a *case* for spectacles; the *case* of a watch, a cartridge, or an insect pupa. * * *

In the same work, "box" is defined as:

*box, n.* 1. a. Typically, a receptacle with four sides, a bottom, and a cover, made of any of various materials, as wood, cardboard, steel, etc.; loosely, any of various similar receptacles. *Box* is a general term for closed receptacles, esp. such as are readily portable, and includes *case, casket, chest, coffer, pyx,* etc. In early use *box* was commonly restricted to small receptacles.

Funk and Wagnalls New Standard Dictionary, 1925, gives the following pertinent definitions of "box":

*box, n.* 1. A receptacle or case, usually six sided and rectangular, of wood, pasteboard, metal, or other material, for many and various uses. A *box* is distinguished from a *basket,* in having stiff, more or less solid, sides; from a *bowl,* in being square rather than round: from a *barrel, hogshead,* or the like, in that the latter is made of staves bound in hoops. 2. Any one of various objects or receptacles variously resembling a box. * * *

With reference to the question presented, it is evident that the two words hereinbefore defined may be frequently and appropriately used synonymously. On the other hand, "box" is restricted in meaning generally to a receptacle rectangular in shape with four sides, a bottom and a cover, while "case" includes within its meaning not only a box but also receptacles of assorted shapes, such as a sheath, a pillowcase, the case of a watch, etc. The combination of words "cigarette case" does not appear to be defined in any dictionary.

Where no doubt exists as to the meaning of a term employed in a statute, extraneous aids in the interpretation of that term must not be employed for there is no need for construction where no ambiguity exists. See *Thorans, Inc.* v. *United States,* 31 C. C. P. A. (Customs) 125, C. A. D. 261.

It is apparent, however, that the words "cigarette cases" are not sufficient in and of themselves to determine the purpose of the legislation here involved, and that the term as employed in the trade agreement under consideration is ambiguous and doubtful. Therefore, in order to give effect to the intent of the negotiators of the agreement, it was not only the right but also the duty of the court below in the interpretation of the term to resort to extraneous aids if available under the established rules of evidence. See *United States* v. *American Trucking Association,* 310 U. S. 534, 542.

The duty of the Tariff Commission in the trade agreements program according to published official documentation is to supply to the President and the departmental organization all information pertinent to imports into the United States of commodities which may be included in trade agreement negotiations. Section 4, act of June 12, 1934, 48 Stat. 943, 945, extended by Joint Resolution, 50 Stat. 24, approved March 1, 1937.

After the consummation of a trade agreement, the Tariff Commission has made a practice of publishing a digest consisting of the data previously furnished the President and the departmental organization but omitting therefrom information concerning commodities which were not included in the final agreement. See Executive Order No. 6750 of June 27, 1934, T. D. 47165, 66 Treas. Dec. 58; Reports of Committee on Ways and Means, No. 409, 78th Congress, pp. 2 to 4, and No. 594, 79th Congress, pp. 5 and 6; Hearings Before the Committee on Finance, United States Senate on H. R. No. 3240, 79th Congress, pp. 77 to 80, inclusive; Official Press Release issued by the United States Tariff Commission, December 15, 1938.

In announcing the publication of its digests of trade data on the agreement between the United States and the United Kingdom which was signed a short time previously, the Tariff Commission in the press release hereinbefore cited stated: "These digests summarize for each commodity information regarding the old and new rates of duty, domestic production imports and exports, and conditions of competition between imports and domestic production. The material presented has been drawn from the detailed data made available by the Tariff Commission to the Trade Agreements Committee, which is the interdepartmental administrative body charged with carrying out the trade agreements program. The digests relate only to those commodities on which concessions were made; a large number of other items were considered before and during the negotiations but no action was taken on them."

From the nature of the negotiations, it is clear that the digests which are published by the Tariff Commission cannot be issued until after the trade agreement is signed because prior to that time it is uncertain what products will be included in the final agreement. It is also clear that the digests originally furnished the interdepartmental organization are not publishable prior to the signing of the final agreement because they contain confidential information. See *Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294. The fact that the digests were not issued to the public until after the signing of the trade agreement is not therefore of controlling importance here because the essential information was before those responsible for fixing the rates of duty during their actual determination.

In the Digests of Trade Data, *supra*, the following quotations have been submitted as pertinent to the issue in the case at bar:

*General Statement:* Cigar and cigarette cases in chief value of metal or set with and in chief value of precious or semiprecious stones, designed to be carried on or about the person and valued at more than 20 cents per dozen pieces are dutiable under subparagraph 1527 (c).

All other cigar and cigarette cases except those made of china, porcelain, Parian, bisque, earthenware, and stoneware, which are specifically excluded, are dutiable as smokers' articles n. s. p. f. under paragraph 1552. Only those cases which are wholly or in chief value of leather are affected by the trade agreement with the United Kingdom.

*Description* and *Uses:* Cigar and cigarette cases of leather provide a convenient means of carrying cigars and cigarettes on the person. Various kinds of light leathers are used in making cigar and cigarette cases, the price of which varies with the fineness of the leather and the quality of the workmanship.

It is obvious that the information supplied in the foregoing digests is pertinent to the issue here involved and that the court may take judicial knowledge thereof. Such information is not binding upon the court but it may be considered as bearing upon the identity of the merchandise under consideration.

The clear deduction to be made from the facts presented in the case at bar is that the cigarette cases provided for at the lower rate of duty in the trade agreement are those made wholly or in chief value of leather and designed solely to be carried on or about the person. Smokers' articles designed to be placed on a table or desk for holding cigarettes, such as the box represented by Exhibit 1, are therefore excluded from the benefits of the agreement. Furthermore, this court of its own knowledge of the common meaning of the term "cigarette cases" is compelled to reach the same conclusion that is implied in the foregoing digests of trade data.

In customs litigation, it is necessary for the importer to prove not only that the classification made by the Collector of Customs was erroneous but also that its own contention is correct. See *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, 157, C. A. D. 227. Since the importer here failed to meet these requirements, its protest should have been overruled and the action of the collector affirmed in classifying and assessing the merchandise with duty at 60 per centum ad valorem as smokers' articles not specially provided for under paragraph 1552 of the Tariff Act of 1930.

The judgment of the United States Customs Court is accordingly *reversed.*