**ANDREW DOSSETT IMP., INC.**

v.

**UNITED STATES.**

C.D. 3167, Protest Nos. 65/17564–80032.

United States Customs Court,
Third Division.

Oct. 18, 1967.

Glad & Tuttle, San Francisco, Cal. (Edward N. Glad and Robert Glenn White, San Francisco, Cal., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Harold L. Grossman and Steven R. Sosnov, New York City, Trial Attys.), for defendant.

Before RICHARDSON and LANDIS, Judges.

RICHARDSON, Judge:

The merchandise of this protest consists of certain boats described on the invoices as 8, 9, 10, and 12 foot motor boats, which were manufactured in and

exported from England by Avon Rubber Company, Ltd. and entered at Los Angeles, Calif., by the plaintiff importer. The boats were classified in liquidation under item 696.35 of the Tariff Schedules of the United States, hereinafter referred to as TSUS, as "Pneumatic craft" and assessed for duty at 12.5 per centum ad valorem. The importer claims that the boats should be classified under item 696.05 of TSUS as "pleasure boats" valued not over $15,000 each and assessed for duty at the rate of 4 per centum ad valorem.

The essential facts of this controversy as developed in the testimonial and documentary evidence are not in dispute. It appears that the boats in question are constructed of a heavy nylon fabric impregnated on both sides with Dupont hypalon, a synthetic rubber, that in use the boats are inflated with air which is compartmentalized and controlled by separate valves, that the boats are equipped with at least one removable, air-inflatable center thwart for latitudinal strength, and that the boats are flat bottomed, with bow angled out of the water. The boats are propelled either by means of a low horsepower outboard motor (between 2 and 5 h. p.) which is mounted on a tubular metal and wood motor bracket to secure which bracket heavy-duty rubber beckets brackets are built into the fabric of the boats, or by means of rowing oars to secure which oarlocks are also built into the boat fabric. As imported the boats in issue are equipped with motor brackets but not with oars, although it appears that the boats are marketed abroad for exportation to this country and elsewhere with oars as standard equipment and with motor brackets featured as optional equipment. These boats, which when inflated weigh between 30 and 50 pounds and carry between 3 to 7 people depending upon the model employed, can be deflated when not in use, and folded and stored or carried in a duffle bag which accompanies the boats as part of their standard equipment.

Andrew Dossett, president of the plaintiff importing firm and of Seagull Marine Sales on whose behalf the involved boats were imported, testified that the Avon line of boats was taken on to complement the importation and sale of the British Seagull outboard motor which latter line is the main line of business of Seagull Marine Sales in certain Western States and in Mexico. The witness testified that he has used the Avon boats both with and without a motor, and has seen them used as yacht tenders, fishing boats, skin diving boats and as just regular pleasure run boats, and that about 80 to 90 percent of the time the boats were being propelled by a motor. The witness stated that the Avon boats do not row as well as hard hull boats; and he attributes this fact to the light weight of the Avon boat, its raised bow which offers resistance to the wind, and the fact that the boat rides on top of the water, drawing only an inch or so of water.

Mr. Dossett's testimony with respect to the relatively uneasy rowing performance of the Avon boat was corroborated by testimony of Robert P. Slaff, proprietor of Inland Marine Company, an importer and dealer of the British Seagull outboard motors and Avon inflatable boats on the east coast and mid-Atlantic states, and by testimony of Harold G. Bruster, manager of the camp and tackle department of Abercrombie and Fitch, who sells Avon boats on special order from catalogue. Both Mr. Slaff and Mr. Bruster have had experiences with rowing Avon boats. And Mr. Slaff testified that about 80 percent of his sales of Avon boats included the motor bracket in the initial package, and that many persons who purchased the boat without the bracket returned to buy the bracket. He also stated that he has seen the Avon boats in use in certain east coast waters and that in most cases they were being used with motors.

The record also shows that the fabric of which Avon inflatable boats are made is tougher and heavier by comparison to fabrics of which other inflatable boats

are made, and that Avon boats are priced above the prices commanded in the domestic market by other inflatable boats, which boats Mr. Dossett characterized as being "mainly just floats or rafts".

On this state of the record it is clear that the involved boats are pneumatic boats, and that they are designed chiefly for propulsion by means of outboard motors. The question is whether design of pneumatic boats chiefly for use with motors removes such watercraft from the provision for "pneumatic craft" in item 696.35 of TSUS and places such watercraft under the provision for "yachts or pleasure boats" in item 696.05 of TSUS.

The pertinent provisions of TSUS read as follows:

Subpart D.  Pleasure Boats; Floating Structures

*Subpart D headnote:*

1. This subpart does not cover—

   (i) yachts or pleasure boats provided for in items 696.-05–.10 if in use or intended to be used in trade or commerce, or if brought into the United States by non-residents thereof for their own use in pleasure cruising; or

   (ii) vessels which are not yachts or pleasure boats (see general headnote 5(e)).

| Item | Articles | Rate[s] of Duty |
|---|---|---|
| | Yachts or pleasure boats, regardless of length or tonnage whether motor, sail, or steam propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yachts or boats are brought into the United States under their own power * * *:<br>Yachts or pleasure boats: | |
| 696.05 | Valued not over $15,000 each | 4% ad val. |
| | *   *   *   *   * | |
| | Canoes, racing shells, pneumatic craft, and pleasure boats not specially provided for which are not of a type designed to be chiefly used with motors or sails * * * | |
| | *   *   *   *   * | |
| 696.35 | Pneumatic craft | 12.5% ad val. |
| | *   *   *   *   * | |

In support of its contentions the importer calls our attention to the case of Healthway's, Inc., et al. v. United States, 52 Cust.Ct. 210, C.D. 2462. In that case the merchandise consisted of rubberized canvas inflatable boats which the court found from the evidence to be equipped to be propelled more commonly by outboard motor than by rowing. The court held the boats to be "motor boats" within the broadened definition of that term under paragraph 370 of the 1930 Tariff Act. The decision in the cited case turned upon a finding of *suitability* of the boats for use with motors, rather than *actual use* by such means of propulsion, which latter criterion the court held to be not necessarily determinative of classification under paragraph 370.

The importer cites the *Healthway's* case as being indicative that paragraph 370 of the 1930 Act was not a chief use provision, pointing out by way of reference to the Tariff Classification Study that the intent of Congress in TSUS is to continue the prior treatment of yachts or pleasure boats whether motor, sail or steam propelled. Plaintiff goes on to point out that the test of suitability for propulsion of pleasure boats by motor, sail or steam under the predecessor paragraph 370 conflicts with the provision for "pneumatic craft" under item 696.35 of TSUS, which item plaintiff associates with the requirement that such articles be "not of type designed to be chiefly used with motors". Plaintiff takes the position that such "negatively inverse requirement" as to pneumatic craft the subject of item 696.35 classification does not "properly reach back to and impart a classification requirement to item 696.-05 that is in fact *not stated* or *implied* in the qualifying preface to item 696.-05", [italics quoted] particularly so, in view of the fact that "item 696.35 is a 'not specially provided for' grouping". Plaintiff then adds that it is not necessary to determine this because the facts establish that the involved boats are chiefly used with motors.

Defendant contends that item 696.35 covering "pneumatic craft" is not modi-fied by the words "not specially provided for which are not of a type designed to be chiefly used with motors or sails * * * " as such words relate to the words "pleasure boats" which precede the phrase in question; that the provision for "pneumatic craft" is an *eo nomine* provision which includes all forms of pneumatic craft, citing Nootka Packing Co. et al. v. United States, 22 CCPA 464, T.D. 47464, and that because the definition of motor boat under paragraph 370 of the predecessor tariff act included a yacht or pleasure boat, it does not follow that "yachts or pleasure boats" of item 696.05 encompass all motor boats.

The court feels that the word "and" before the words "pleasure boats" is a coordinating conjunction used to connect elements of equal grammatical value. A question would doubtless never have arisen had there been a comma inserted after the words "not specially provided for".

Whether we say "pneumatic craft" is modified by the words "not specially provided for which are not of a type designed to be chiefly used with motors or sails * * * " or whether we say the words "not specially provided for" relate only to the words "pleasure boats", despite the fact that no comma was inserted after the word "for" is immaterial. The briefs of plaintiff and defendant reveal that the use of commas is not entirely consistent in the tariff schedules. Also, as a general rule punctuation is no part of a statute. It is "* * * always subordinate to the text, and is never allowed to control its meaning." Holmes v. Phoenix Ins. Co. (8th Cir. 1899), 98 F. 240, 242.

The court notes that the articles of subpart D of part 6 of schedule 6 of TSUS, hereinafter referred to as subpart D, are provided for under two headings, and that all of the boats subject to classification under one or other of these headings must at least respond to the designation of "pleasure boat". It is clear, therefore, that subpart D recog-

nizes and provides for some kind of distinction between pleasure boats.

Paragraph 370 of the Tariff Act of 1930 provided that " * * * The term 'motor boat,' when used in this Act, includes a yacht or pleasure boat * * *".

█ In view of the fact that the term "motor boat" included a yacht or pleasure boat by definition in paragraph 370, and the fact that Congress was advised that no change was intended in the existing treatment of yachts or pleasure boats under paragraph 370 in items 696.-05 through 696.15 (see explanatory notes to the Tariff Classification Study, schedule 6, at page 327 (1960), which states that "Items 696.05 through 696.15 reflect the existing treatment of yachts or pleasure boats and parts thereof under paragraph 370"); and the "existing treatment" of pleasure boats at the time was found in the case of Healthway's Inc., et al. v. United States, 52 Cust.Ct. 210, C.D. 2462, which held an inflatable craft suitably constructed for the use of a motor (as are the pneumatic crafts in issue) to be a motor boat, it follows that "yachts or pleasure boats" in item 696.05 are intended to embrace all motor boats judicially determined to be under paragraph 370.

The limitation on the *eo nomine* designation in item 696.35 excludes pneumatic craft that are designed to be used chiefly with motors, and the evidence adduced in this case establishes that the pleasure boats in issue are such merchandise. Plaintiff's exhibit 3 and collective exhibit 4 (R. 20–23, 44–46) show them to be chiefly designed to be used with a motor; and there is a higher price for these pneumatic boats as compared to ordinary pneumatic boats. (R. 17, 27, 44–45.) Furthermore the unique design and construction of these boats set them apart from ordinary pneumatic boats, as motor boats. The protest is sustained.

Judgment will be entered accordingly.

LANDIS, Judge, concurs.