(C.D. 4207)

EATON MANUFACTURING CO. ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 26, 1971)

*Sharretts, Paley, Carter & Blauvelt* (*M. Barry Levy* of counsel) for the plaintiffs.

*L. Patrick Gray, III*, Assistant Attorney General (*Robert Blanc*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The ultimate question here presented for our determination in eight (8) protest cases which have been consolidated for trial is the proper classification of certain marine engines and outdrives which were manufactured by Volvo Penta, exported from Sweden, and entered at the ports of Seattle and New York. The merchandise of protest 65/13083, entered at Seattle under entry 19511, consists of marine engines and outdrives which were appraised as separate entities and then classified in liquidation as such under TSUS items 660.44 (internal combustion engines) and 696.15 (parts of yachts or pleasure boats), respectively. It is claimed in the protest that the outdrives should be classified as an entirety with the marine engines under TSUS item 660.44 by reason of headnote 3 of part 4 of schedule 6. Said headnote 3 reads:

> An electric motor or other power unit imported with a machine is classifiable with such machine as an entirety if fitted thereto when imported, or, if the machine or its framework is designed to receive the power unit, or if the shipment includes a common base designed to receive both the power unit and the machine.

The merchandise of protests 67/17604, 67/70250(A) and 68/46572, entered at New York under entries 958584, 928462, and 993755, respectively, also consists of marine engines and outdrives. However, the merchandise of these entries was appraised as entireties and classified in liquidation as such under TSUS item 696.15 as parts of pleasure boats. In protest 67/17604 it is claimed that the merchandise, described as "MACHINE PARTS," should be classified under TSUS item 678.50 as machines not specially provided for and parts thereof. In protest 67/70250(A) it is claimed that the merchandise, described as "MACHINE PARTS," should be classified under TSUS item 678.50 as machines not specially provided for and parts thereof, or as an entirety with the marine engines under TSUS item 660.44 by reason of said headnote 3. And in protest 68/46572, it is claimed that the merchandise,

described as "MACHINE PARTS," should be classified under TSUS item 660.44 or under TSUS item 678.50.

Protests 67/11820, 68/31959, 67/49180, and 67/69511 involve entries of outdrives made at the port of New York which were classified in liquidation under TSUS item 696.15 as parts of pleasure boats. In protest 67/11820, covering entry 741096, it is claimed that the merchandise, described as "MACHINE PARTS," should be classified under TSUS item 678.50 as machines not specially provided for and parts thereof. In protest 68/31959, covering entry 1088000, it is claimed that the merchandise, described as "ENGINES AND MACHINE PARTS," should be classified under TSUS item 660.44 as an entirety perforce of said headnote 3, or under TSUS item 678.50 as machines not specially provided for and parts thereof. No engines were imported under this entry, however. In protest 67/49180, covering entries 1073656 and 939936, it is claimed that the merchandise, described as "MACHINE PARTS," should be classified under TSUS item 678.50 as machines not specially provided for and parts thereof. In protest 67/69511, covering entry 885877, it is claimed that the merchandise, described as "MACHINE PARTS," should be classified under TSUS item 678.50 as machines not specially provided for and parts thereof, or under TSUS item 660.44 as entireties with the marine engines as internal combustion engines by reason of said headnote 3. No engines were imported under this entry either.

At the time of trial most of the aforementioned protests were the subject of motions to amend which had not been acted upon by this division of the court. In protest 65/13083 plaintiff seeks to amend the protest to add an alternative claim that the "merchandise" should be classified under TSUS item 680.45 (fixed ratio speed changers and parts thereof). And the same amendment is sought with respect to protests 67/70250(A), 68/46572, and 68/31959. In protest 67/17604 plaintiff seeks to amend the protest to add the alternative claims that the "merchandise" should be classified under TSUS item 680.45 or under TSUS item 660.44. The same amendments are sought with respect to protest 67/11820. No attempt is made by plaintiff to amend the claims set forth in protests 67/49180 and 67/69511.

At the trial counsel for the plaintiffs stated the plaintiffs' position herein as follows (R. 3) :

> Plaintiffs claims that the imported articles are not entireties, and that the engines are properly dutiable as such, under Item 660.44, T.S.U.S.; and that the outdrives are properly dutiable as fixed ratio speed changers, provided for in Item 680.45, T.S.U.S., or as machines, not specially provided for, under Item 678.50, T.S.U.S.

And the foregoing statement of position is immediately followed by the following statement of counsel for the plaintiffs (R. 3-4) :

Should the court hold that the engines and outdrives are entireties, plaintiffs alternatively claim that said entirety is properly dutiable as a machine, not specially provided for, under the provision of Item 678.50, T.S.U.S., or as internal combustion engine, under Item 660.44, T.S.U.S., or as a fixed ratio speed changer, under Item 680.45, T.S.U.S.

The threshold question presented by the pleadings herein and statements of counsel as aforesaid concerns the legal sufficiency of characterization of merchandise covered by protests 67/17604, 67/70250(A), and 68/46572 as "MACHINE PARTS." Did plaintiffs intend by the use of such term in these protests to embrace both the marine engines and the outdrives? If the answer to this question be in the affirmative, then plaintiffs would have no standing to pursue their primary contention as announced by counsel at the trial. The posture of these protests is such that they support the appraisement and classification of the marine engines and outdrives as an entirety. And no amendment of the protests was sought or obtained at the time of trial which would have presented the issue of "non-entirety" to the court. *Cf. Asam Manufacturing Co.* v. *United States*, 37 Cust. Ct. 373, 374, Abs. 60262 (1956).

If on the other hand the term "MACHINE PARTS" as used in said protest was intended by plaintiffs to apply to only one of two imported articles to which the term could possibly have reference within the context of this case, namely, marine engines or outdrives, it is not clear to the court, without hazarding a guess, exactly which of the two articles is being identified in the protests by the appellation "MACHINE PARTS," bearing in mind the various part 4, schedule 6 claims advanced by plaintiffs in said protests based on headnote 3 of that part. The term seems more like a classification reference than a description of merchandise—a chameleon-like term which is applicable to both articles.

The term "MACHINE PARTS" was not used on any of the invoices at bar or on any of the official papers connected with the case, in connection with a description of the merchandise. And the disposition of these three protests by the Regional Commissioner of Customs at New York on customs form 4297 does not shed any light on his understanding of the intendment of the protestants, the plaintiffs herein, concerning the identity of the merchandise covered by the protests. He simply affirmed his determination without indicating by notation a description of the merchandise affected in the report on form 4297. Thus, the full burden is thrown upon the court to ascertain for all purposes of this case, including a disposition of the motions to amend, whether these three protests cover both the engines and the outdrives, or just one or other of these articles. The court is unable to make this

determination upon the basis of an examination of these protests and of all papers connected therewith, and this, by virtue of what the court regards as an improvident use of a generic term to describe merchandise identifiable in other specific terms. And since characterization of the merchandise covered by said protests is patently insufficient to enable the court to proceed herein, the said motions to amend the protest must be, and are hereby, denied, and said protests must be, and are hereby, dismissed *sua sponte* for legal insufficiency. *U. Fujita & Co. et al.* v. *United States*, 26 CCPA 63, T.D. 49611 (1938) ; *National Carloading Corporation* v. *United States*, 44 Cust. Ct. 493, Abs. 64258 (1960).

Protest 65/13083, also involving both marine engines and outdrives while describing neither in so many words, is not legally insufficient in terms of the characterization of merchandise covered thereby, in view of the classification reference, namely, "12% ad valorem under Item 696.15," which points inescapably to the outdrives—there being no merchandise under the entry that was classified under this provision other than the outdrives. We find, however, that the solitary protest claim set forth in protest 65/13083 respecting the outdrives does not present a justiciable issue to the court.

Headnote 3 of part 4 of schedule 6 to which reference is made in protest 65/13083, the language of which is heretofore set out in this opinion, plainly provides for classification of a power unit *with the machine* with which the power unit is imported, as an entirety. The provision is undoubtedly new,[1] and appears to undertake to rally together the usual components of machines under the various part 4 provisions for machines and provisions for machines found elsewhere in the tariff schedules.

Headnote 3 clearly does not provide for classification of the machine *with the power unit* with which the machine is imported—the converse of the proposition described in the headnote. In other words, under headnote 3 when engines and outdrives are imported together under the circumstances detailed in the headnote, the engines are to be treated in effect as "machine parts," losing their separate identities and taking on that of the outdrives or machines with which the engines are imported, for classification purposes. However, the claim set forth in protest 65/13083 purports, in the name of headnote 3, to seek classification of the outdrives as "engine parts," with the outdrives losing their separate identities and taking on that of the engines with which the outdrives are imported, for classification purposes—a pos-

[1] See Tariff Classification Study, Sched. 6, pages 257, 260.

ture which is wholly outside of the scope of headnote 3 as we read its provisions. And since no justiciable claim is set forth in said protest as filed, it did not confer jurisdiction upon the court, may not be amended, and must be dismissed for legal insufficiency on this account. *National Carloading Corporation* v. *United States, supra; Heemsoth Kerner Corporation* v. *United States*, 31 Cust. Ct. 113, C.D. 1554 (1953). Accordingly, the motion herein to amend protest 65/13083 is denied, and said protest is dismissed for lack of jurisdiction in the court to entertain it.

We find that the jurisdictional pleading defect which condemned protest 65/13083 is also present in protests 68/31959 and 67/69511 in the form of one of two alternative claims set forth therein. We do not, however, dismiss these protests since both of them contain at least one justiciable claim which confers jurisdiction upon the court. However, the claim in these two protests involving headnote 3 falls of its own weight and need not be considered further since, as previously indicated herein, no engines were imported under the entries covered by these protests. Under these circumstances protests 68/31959 and 67/69511 present no occasion for invoking the statutory entireties rule of headnote 3 in any event.

With respect to the motions to amend as they affect the remaining four protests before the court covering only the outdrives, namely protests 67/11820, 68/31959, 67/49180, and 67/69511, it is clear, in the light of the opening statement of plaintiffs' counsel confining plaintiffs' claims to items 680.45 and 678.50, which posture is fortified by arguments set forth in the brief, that plaintiffs have abandoned the contention that the outdrives are classifiable as engines under item 660.44. Accordingly, the motion to amend protest 67/11820 to add a claim under item 660.44 is denied. The motions to amend protests 67/11820 and 68/31959 to add a claim under item 680.45 are granted.

To recapitulate the pending claims in view of the foregoing deletions and additions, the claims now before the court are as follows:

1. Under protests 67/11820 and 68/31959, the claims that the outdrives are dutiable under item 680.45 as speed changers, or alternatively, under item 678.50 as machines not specially provided for;

and

2. Under protests 67/49180 and 67/69511, the claim that the outdrives are dutiable under item 678.50 as machines not specially provided for.

This brings us to the merits of the case. The competing tariff provisions before the court read as follows:

[Classified]

> Yachts or pleasure boats, regardless of length or tonnage, whether motor, sail or steam propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yachts or boats are brought into the United States under their own power; and parts thereof:
>> Yachts or pleasure boats:
>> \* \* \* \* \* \* \*

| | | |
|---|---|---|
| 696.15 | Parts _____ | 12% ad val. |

[Claimed]

> \* \* \* \* \* \* \*
>> Gear boxes and other speed changers, and parts thereof:

| | | |
|---|---|---|
| 680.45 | Fixed ratio speed changers \* \* \*[2] and parts thereof_____ | 9% ad val. |
| 678.50 | Machines not specifically provided for, and parts thereof_____ | 10% ad val. |

The record before the court consists of the testimony of four witnesses called on plaintiffs' behalf, four documentary exhibits, and the official papers. It appears from the evidence that the outdrive unit at bar, which is a means of propelling a boat, is imported as a complete unit—minus only the propeller which is sold by the plaintiffs as an accessory. Propeller use is influenced by hull construction, and as such, propellers are generally supplied by the shipbuilder. The outdrive and the engine which powers it are mounted in the stern section of the boat in which installed, with the outdrive mounted through and supported by the transom, and the engine mounted on the inboard side of the stern section supported by the structural members of the boat. Plaintiffs' exhibit 1, depicting a cutaway section of an outdrive, indicates that the outdrive is connected to the engine at the flywheel end of the engine by means of a drive shaft and universal couplings extending through the transom. The imported outdrives are designed to operate on engine output ranging from low to medium horsepower on boats ranging between 15 and 30 feet in length.

With respect to the use of the imported outdrives at bar Paul J. Leveille, general sales manager for the marine division of plaintiff Chrysler Corporation, testified on cross-examination (R.20–22):

> Q. As these articles are imported, in your experience in sales, what would you say the majority of outdrives are used for?—A. For powering a boat.

---

[2] Omitted matter was the subject of amendment effective December 7, 1965 (P.L. 89–241).

Q. But you would have no figures as to what types of boats these are used for?—A. Oh, anywheres from 15-foot boats up to 28-, 30-foot boats.

Q. In your experience in sales, what would you say the usual use of a 15- to 28-foot boat would be?

\*        \*        \*        \*        \*        \*        \*

A. Proportionately the same as any other type of power. I would say 90 per cent pleasure boats, and 10 per cent commercial.

Q. Nine percent?—A. Ninety percent; I'm sorry.

Q. Yes. Thank you. Would you say that they are usually sold to individual boat owners.—A. No. We sell them to boat manufacturers.

Q. To boat manufacturers. But they are manufacturing, primarily, pleasure craft?—A. Yes.

And John Frederick Heckenhauer, former plant comptroller of the plaintiff Eaton Manufacturing Co.'s marine division, who is now plant comptroller of the marine division of the successor company, Eaton, Yale & Towne Corporation, testified that the sales experience of his company with respect to the outdrives was the same as that of the co-plaintiff Chrysler Corporation. (R. 53–55)

As to the nature and characteristics of the imported outdrives, the testimony of John William Hurst, chief engineer of plaintiff Chrysler Corporation's marine and industrial engine division, is pertinent. On this subject Mr. Hurst testified on direct examination (R. 29):

Q. Would you describe the outdrive unit?—A. The outdrive is a fixed ratio speed changer, and performs a function of a transmission.

Later, he testified on direct examination in connection with a comparison of an inboard installation with an inboard-outdrive installation, as follows (R.33):

A. . . . An inboard outdrive installation, the engine is normally placed in the stern of the boat, the power is transmitted through the transom, down a vertical shaft, and turns another ninety degree corner with a shaft that is parallel to the bottom of the boat.

And on cross-examination, witness Hurst testified (R. 43):

Q. Does the outboard drive in issue here contain a clutch?—A. Yes.

Q. What does the clutch do?—A. It disengages the power between the engine and propeller to permit shifting from forward to reverse.

And, again, on redirect examination, Mr. Hurst testified (R. 44–45):

Q. Mr. Hurst, do you consider the clutch part of the gear box?—A. Yes.

Q. And is it a necessary part?—A. It's normally considered necessary, a necessary part. Yes.

Other testimony in the record tends to establish that the outdrive may be operated with any number of different types of engines and is not limited to being operated with the engine with which it is imported, that the outdrive and engine are separately mounted in and supported by the boat in which installed, and that neither article losses its separate identity following installation. And it was brought out in the testimony that the outdrive has uses other than in pleasure boating, and is used in commercial fishing boats (gillnetters), aquatic control craft, small tugboats, and Navy target boats.

Plaintiffs contend that the imported outdrives are not *parts* of pleasure boats because the evidence shows that they are not dedicated to use as a part of a specified article, namely, a pleasure boat, and are, in fact, used in a wide variety of watercraft, citing, among other cases, *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831 (1963), which applied the "dedication" test in holding that engine parts were not classifiable as parts of automobiles as to evidence showing uses of the engines otherwise than in automobiles. And plaintiffs also contend that the outdrives in issue are fixed ratio speed changers, upon the strength of the statement of the witness Hurst to that effect.

Defendant contends that the outdrive in issue is more than a fixed ratio speed changer. Defendant's primary contention, however, is that the outdrive at bar is a part of a pleasure boat because the evidence shows that it is chiefly used in pleasure boats, citing TSUS General Interpretative Rule 10(ij) which reads:

> a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

It is apparent that counsel are challenging and defending classification of the instant outdrives under item 696.15 on the basis of arguments which begin and end at the inferior heading lines "Yachts or pleasure boats" and "Parts." And if item 696.15 was in fact an abstract provision for parts of yachts or pleasure boats as counsel seem to think it is, then, in our opinion, defendant would have the better of the argument on the basis of plaintiffs' evidence of chief use. General Interpretative Rule 10(ij) above noted substitutes a "use" test for the "dedication" test in determining the classification of parts of articles, subject only to a rule of relative specificity as to competing provisions for parts, thus in effect obsoleting the principle of *United States* v. *Ford Motor Company, supra,* insofar as classification of parts under TSUS is concerned.

The fact of the matter is, however, that item 696.15 is a qualified provision for parts of yachts or pleasure boats—qualified by the language of the superior heading above it, as amplified by subpart D headnotes and General Headnote 5(e). The language of this superior heading and related headnotes is carried into TSUS from the 1930

Tariff Act, and was intended by Congress to be given under TSUS the same interpretation it was given when it was part of the definition of the term "motorboat" in paragraph 370 of the 1930 Act. *Andrew Dossett Imp., Inc.* v. *United States*, 59 Cust. Ct. 350, 354, C.D. 3167, 273 F. Supp. 908 (1967).

Under paragraph 370 of the 1930 Act this same language now appearing in the superior heading of item 696.15 for the most part was construed to govern classification and assessment of duty against *foreign*-built yachts as articles of commerce (as distinguished from non-dutiable instrumentalities of commerce) when they were brought into the United States for sale and then sold to a resident of the United States. See *H. W. Chadbourne* v. *United States*, 27 CCPA 85, C.A.D. 66 (1939), and the legislative history discussed therein regarding the usage of the term "resident of the United States." And it, therefore, follows from this that any classification of imported articles under item 696.15 must be predicated upon a finding that such articles are in fact parts of *foreign*-built yachts or pleasure boats which are either owned by a resident of the United States, or are brought into the United States for sale to a resident thereof.

It is clear from the evidence of record that the imported outdrives at bar are not parts of any *foreign*-built pleasure boats. The evidence establishes that these outdrives are imported as articles of commerce *per se*, and that they are subsequently used in the *domestic* shipbuilding industry. Consequently, these outdrives are precluded from classification under item 696.15 by virtue of the limitations of the controlling superior heading, and must, therefore, find classification elsewhere in TSUS as the ordinary imported articles of commerce. As such, the court is of the opinion that the involved outdrives were improperly classified under item 696.15, and so holds.

With respect to plaintiffs' claim for classification of the outdrives under item 680.45 as fixed ratio speed changers of the "gearbox" type, it is noted that item 680.45 is covered under a subpart for Parts of Machines, namely, subpart J of part 4 of schedule 6. The Tariff Commission reported that the articles covered by subpart J are either parts of machines or are related to machinery (see Tariff Classification Study, Sched. 6, page 275). The evidence at bar shows the outdrive at issue to be a complete machine in and of itself, lacking only a propeller which is treated as an accessory.

Although Mr. Hurst characterized the outdrive as a "speed changer," his other testimony on the subject tends to negate any function of the outdrive as a speed changer. Mr. Hurst testified that the outdrive transmits the engine power horizontally, then down a vertical shaft and along a horizontal shaft. He also testified that the function of the clutch is to engage and disengage the gears to permit shifting from

forward to reverse. These particular functions are not indicative of "speed changing" characteristics.

Also, an examination of the outdrive depicted in exhibit 1 reveals the geartrain to consist essentially of bevel gears at both ends of a vertical shaft which mate or mesh with other shaft connected bevel gears of apparently equal diameter at right angles in a permanent relationship of each other. And in our judgment such an arrangement of the geartrain tends only to confirm the testimony of the witness Hurst with respect to the transmission of power first horizontally, then vertically, and then horizontally again with final output of power at the propeller shaft end. There is no other evidence of record relating to "speed changing" characteristics of the outdrives. And it appears to the court that a change of speed of the outdrives at bar is accomplished through manipulation of the engine throttle [3] rather than by means of outdrive gearing.

The term "gearbox" is defined as:

> gearbox n. * * *
> 2. The unit comprising the change gears in a power-transmission system. Called also *transmission*.

Webster's New International Dictionary, Second Edition (1957).

And the term "change gear" is defined by the same lexicon as:

> change gear. Mach. A gear by means of which the speed of a mechanism or a vehicle may be changed while the speed of its driving agent is constant.

And set opposite this definition is the following pictorial representation of a change gear with accompanying explanation of its working parts:

> Change Gear. A Gear Wheel constantly in mesh with $B$ and rigidly fastened to Propeller Shaft $P$ but ordinarily not connected with Square Shaft $M$; $K_1K_2$ Gear Wheels rigidly connected together but sliding on $M$ when moved by rod $L_2$; $H$ Gear Wheel sliding on $M$ and Moved by $L_1$; $N$ Bevel Gear driving the differential gear which turns the driving axle. For 1st (Highest Speed, $H$ is locked with $A$ (direct drive); 2d Speed, $H$ gears with $C$; 3d Speed, $K_2$ gears with $D$; 4th Speed, $K_1$ gears with $E$; Reverse, $K_1$ gears with $F$ through idle wheel $G$.

---

[3] Middle dimension drawing in exhibit A depicts engine throttle cable designated by letter B.

It is to be noted that the above "explanation" of the change gear operation indicates that, with the possible exception of the gear designated as $K_1$, all the other gears shown have a *fixed* ratio inasmuch as they mate or mesh only with the same counterpart gear in operation. However, since gear $K_1$ mates or meshes with two different pinions at different times, depending upon whether 4th speed or reverse speed is desired, the relationship here between gear $K_1$ and its two pinions may involve *variable* ratios, that is, if the pinions are of different sizes.

We think that the definition and related matter above noted, together with the foregoing testimony of the witness Hurst concerning outdrive function and the other evidence in the record to which reference has been made herein, militate against our coming to a conclusion that the involved outdrives are speed changers with fixed ratios of the gearbox type. On the contrary, the evidence shows that the subject outdrive is in effect what its name implies, namely, a power train which performs under a single housing in delivering energy to the propeller of a boat a function that is equivalent to the function performed by the power train of a conventional type motor vehicle under separate housings (torque converter, transmission, drive shaft, universal couplings, differential, rear axles) in delivering energy to the rear wheels of a motor vehicle. Accordingly, we hold that the outdrives at bar are not speed changers, and, therefore, that they are not entitled to be classified as such under item 680.45.

This brings us to plaintiffs' alternative claim for classification of the subject outdrives under item 678.50 as machines not specially provided for. Item 678.50 is a residual provision for classification of machines and parts of machines not classifiable elsewhere among provisions for machines and parts. Plaintiffs do not make any affirmative arguments in their brief in support of their alternatives claim under item 678.50. But this fact does not constitute any deterrent to classification here if the outdrives cannot find classification elsewhere. Defendant contends that the relative specificity rule 10 (ij) of General Interpretative Rules bars classification of the outdrives under item 678.50. But since this argument is predicated upon a comparison of item 678.50 with item 696.15 which we have heretofore determined to be inapplicable to this case, defendant's argument must fail.

There is no question in our minds but that the outdrive is a machine. The witness Hurst testified that the outdrive alone is a mechanical contrivance which applies or modifies energy. We are unable to find any provision of the tariff schedules which is expressly applicable to outdrives, however, nor one which is more appropriately suited to classification of outdrives than item 678.50. Therefore, we must find that the involved outdrives are properly classifiable under item 678.50 as machines not specially provided for, as claimed by plaintiffs, and

we so hold. Protests 67/49180 and 67/69511 are sustained. And the claim in protests 67/11820 and 68/31959 for classification of the subject outdrives under item 678.50 is sustained.

Judgment will be entered herein accordingly.