(C.D. 4286)

HOWARD HARTRY, INC., also known as HOWARD HARTRY Co. and HOWARD HARTRY v. UNITED STATES

## United States Customs Court, Third Division

(Decided October 21, 1971)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Susan C. Cassell*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of articles described on the commercial invoice as ALBIN Marine Diesel Engine type AD–2, with reverse gear, reduction gear 2:1. The merchandise was classified in liquidation as parts of yachts or pleasure boats under item 696.15 of the Tariff Schedules of the United States at the duty rate of 12 per centum ad valorem.

Under this protest plaintiff contends that the merchandise should be classified as compression ignition engines under item 660.42, TSUS, at the duty rate of 10 per centum ad valorem. At the trial held on January 28, 1970, the protest was amended without objection by the addition of the same claim already pleaded in the protest.

In this protest the trial judge, obviously induced by lack of objection on the part of government, granted a motion to amend the protest to add a claim of 10 per centum under item 660.42, TSUS, which is the identical claim the plaintiff had in its protest originally. The amendment is surplusage and will not be discussed in this opinion.

The question before the court in this protest is whether the merchandise is diesel engines within the purview of item 660.42 as claimed. The competing tariff provisions here involved are as follows:

[classified under]

> Yachts or pleasure boats, regardless of length or tonnage, whether motor, sail, or steam propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yachts or boats are brought into the United States under their own power; and parts thereof:
> Yachts or pleasure boats:

| | | |
|---|---|---|
| * * * * * | * | * |

| 696.15 | Parts _____ | 12% ad val. |
|---|---|---|

[claimed under]

> Internal combustion engines and parts thereof:
> Piston-type engines:

| | | | |
|---|---|---|---|
| * * * * * | * | * | |

Other:

660.42 Compression-ignition
 engines_____10% ad val.

Although the merchandise was invoiced as diesel engines defendant resists classification of this merchandise under item 660.42 by reason of the fact that these engines are equipped with *reverse gear*. This, according to defendant, renders the engines something more than marine diesel engines, citing as authority for its position the case of *Servo-Tek Products Co.* v. *United States*, 57 CCPA 13, C.A.D. 969 (1969).

Dale R. Brown, owner and manager of Dale Brown Marine Sales, the ultimate consignee of the involved merchandise, testified that his firm is a marine engine distributor which deals in gasoline and diesel auxiliary engines, that he is familiar with the merchandise shown on the invoice at bar, having ordered it and received it, that the AD-2 engine described on said invoice is a two cylinder marine diesel engine which he identified as such on a pictorial illustration which was received in evidence as plaintiff's exhibit 2. The witness testified that he holds an engineering degree, that he knows how the engines are used because he has personally installed them, that they are used as auxiliary engines on sailboats to power them in and out of the channel and where there is no wind, and that he has had an occasion to tear down and repair one of these engines.

Mr. Brown testified that the AD-2 engine has a forward, neutral and reverse clutching mechanism which he identified on exhibit 2 as constituting a marine transmission consisting of forward, neutral, and reverse gears in an SAE (Society of Automotive Engineers) housing. The witness further testified that the transmission is integral with the engine because both engine and transmission use the same lubricating oil, and that it is common to have marine engines manufactured with gearboxes integrated with the engines, and that the transmission in this case is connected both internally and externally with the engine by means of bolts, a drive gear, and oiling through the center of the crankshaft.

Commander David L. Green, chief of the naval engineering branch of the 11th Coast Guard District, testified that he was familiar with marine diesel engines, but that he had no familiarity with the imported engines at bar. He stated that in most cases with marine engines the oil pan serves both the gearbox and the engine.

An illustration of and specifications for the AD-2 engine placed in evidence during the testimony of Commander Green as defendant's exhibit A corroborates the testimony of the witness Brown relative to the unified oiling system in this engine. Exhibit A states:

> The AD-2 is pressure lubricated throughout including the reverse gear—only one oil filler pipe.

Also, the cutaway portion of the AD–2 engine illustration shown in exhibit A indicates that the reduction gears are not housed in the gearbox, but are mounted in a separate housing situated at the end of the engine which is opposite the flywheel end (where the gearbox is located). And, unlike the gearbox, reduction gears appear to be optional equipment on the AD–2 engine. In this connection, exhibit A states:

> The AD–2 can be delivered both for direct drive and with 2:1 or 2.7:1 reduction gear which makes it excellently suited for many types of boats.

Other evidence in the instant record relates to a three cylinder marine diesel engine, one and two cylinder marine gasoline engines, and engine and gearbox parts—merchandise with which we are not here concerned under this protest.

Plaintiff contends that the presence of a marine transmission or gearbox in the imported engines neither requires their classification as "parts" of boats nor precludes their classification as internal combustion engines.

It is to be noted that in its brief the defendant does not undertake to defend the classification of the involved merchandise under item 696.15 as such, but rather takes the position that the plaintiff has failed to establish a different classification for said merchandise. On the evidence at bar it is clear that the involved merchandise was improperly classified under item 696.15 as a matter of law. Item 696.15 is limited in its application to parts of yachts or pleasure boats which are either owned by a resident of the United States or are brought into the United States for sale to a resident of the United States. *Eaton Manufacturing Co. et al.* v. *United States*, 66 Cust. Ct. 293, C.D. 4207, decided April 26, 1971, motion for rehearing denied, appeals pending. And the evidence at bar shows that the subject merchandise is not in this category. Plaintiff imports the AD–2 engines, among other things, as articles of commerce *per se*, and deals in such engines as such in this country. Consequently, the subject merchandise must find classification elsewhere in the tariff schedules.

The case of *Servo-Tek Products Co., Inc.* v. *United States, supra,* cited to us by defendant as controlling here, involved electric motors with reduction gear assemblies. The presence of the reduction gear led our appeals court in that case to treat the importations, for classification purposes, as constituting something more than motors, namely, a unitary piece of machinery containing two elements—a motor as one element and a gear train speed reducer as the other element. In our opinion, *Servo-Tek* is distinguishable from the instant case on its facts. The reduction gear on the subject AD–2 engines is not in issue here, and is, as the record indicates, *optional* equipment. In

issue here is the reverse gear, which, as the record shows, is *standard* equipment on the AD–2 marine diesel engine.

In *United States* v. *Outerbridge & Co.*, 7 Ct. Cust. Appls. 223, T.D. 36511 (1916), the Court of Customs Appeals, for classification purposes under the Tariff Act of 1913, treated steam *reversing gear* (invoiced as such) imported in knocked-down condition with triple expansion marine engines and various other articles as a part of the engine under circumstances where the court was called upon to differentiate between invoiced articles constituting part of the engine and those which did not constitute part of the engine. Of those invoiced articles which the court did not deem to be part of the engine, the court said, among other things, (p. 227) " * * * they do not seem to be an integral part of the engine itself." And the court went on to sustain the importer's alternative claim for classification of the reversing gear and the other articles constituting a complete marine engine under the provision for "all steam engines" in paragraph 165 of the 1913 Tariff Act.

In the instant case identification of the reverse gear with the marine diesel engine seems more compelling than was apparent in the *Outerbridge* case, in view of the uncontroverted evidence of integration of the two units by means of common use of essential systems, i.e., crankshaft and lubrication systems. The extent of integration of the two units is indicated in the testimony of the witness Brown who stated that the use of the engine alone (in its imported condition) without the gearbox would entail additional machine work and modification of the lubrication system. Under the circumstances disclosed in the instant record, and in the light of the holding in *United States* v. *Outerbridge & Co.*, *supra*, we are of the opinion that the reverse gear of the AD–2 ALBIN marine diesel engine constitutes an integral part of the engine itself, and so hold. Therefore, plaintiff's claim for classification of the disputed articles covered by protest 67/60386 under item 660.42 is well taken, and is sustained.

Judgment will be entered herein accordingly.