60 CCPA

**The UNITED STATES, Appellant,**

v.

**HOWARD HARTRY, INC., also known as Howard Hartry Co. and Howard Hartry, Appellee.**

**Customs Appeal Nos. 5490, 5491.**

United States Court of Customs and Patent Appeals.

May 17, 1973.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Patrick D. Gill, for the United States.

Robert Glenn White (Glad & Tuttle), Los Angeles, Cal., attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

These are appeals from the decisions and judgments of the United States Customs Court, 67 Cust.Ct. 284, C.D. 4286 (1971) and 67 Cust.Ct. 352, C.D. 4296 (1971). The two cases involved three protests which were consolidated for trial but thereafter one protest

(67/60386) was severed from the others (protests 67/62901 and 67/65030), for reasons not material here, and decided as C.D. 4286.

The decision in C.D. 4286 sustained the appellee's protest of the classification of merchandise invoiced as ALBIN Marine Diesel Engine type AD–2 with reverse and reduction gears, under item 696.15, Tariff Schedules of the United States (TSUS), as parts of yachts or pleasure boats and dutiable at 12 percent ad valorem. The court held the merchandise to be dutiable at 10 percent ad valorem under item 660.42, TSUS, as compression-ignition engines. The lower court subsequently held the decision in C.D. 4286 to be controlling in C.D. 4296 involving the two severed protests, since the marine engines involved in each case "are the same in all material respects."

The pertinent portions of the statutes involved are:

Tariff Schedules of the United States:
*Classified under*:

Yachts or pleasure boats, regardless of length or tonnage, whether motor, sail, or steam propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yachts or boats are brought into the United States under their own power; and parts thereof:

Yachts or pleasure boats:
\* \* \* \* \* \*
Item 696.15 Parts .............. 12% ad val.
*Claimed under*:

Internal combustion engines and parts thereof:
Piston-type engines:
\* \* \* \* \* \*
Other:
Item 660.42 Compression-ignition engines ............ 10% ad val.

Appellant contends that the imported engines with marine transmissions are more than engines and, therefore, the original classification should have been sustained.

The Customs Court held that classification under item 696.15 as parts of pleasure boats was improper as a matter of law. Its reason was that classification under that provision "is limited in its ap-

plication to parts of yachts or pleasure boats which are either owned by a resident of the United States or are brought into the United States for sale to a resident of the United States." Since, in its view, the merchadise was an article of commerce per se, the court held that the merchandise did not meet the requirements for classification under item 696.-15, citing its decision in Eaton Manufacturing Co. v. United States, 66 Cust.Ct. 293, C.D. 4207 (1971). The portion of that decision pertinent here was reversed by this court in Eaton Manufacturing Co. v. United States, 469 F.2d 1098, 60 CCPA ——, C.A.D. 1076 (1972).

We adhere to our decision in *Eaton*. Therefore, the only issue remaining in this case is whether the imported engines with marine transmissions are "more than" engines as urged by appellant. The lower court held that they were not. We reverse as we agree with appellant that classification within item 660.42 would be improper.

The record here reveals that the engines in issue are used as marine auxiliaries, i. e., their normal use is to power sailboats in and out of channel and when there is no wind to afford propulsion. They are equipped with a component described as a marine transmission which is a forward, neutral and reverse clutching mechanism including forward and reverse gears. The transmission is joined to the engine in a housing and can be removed without affecting the operation of the engine by plugging up the oil sump to prevent loss of oil caused by the removal of the transmission. This removal, though possible, is not a practical operation.

The record also reflects that the involved engines could be used for purposes other than providing motive power for a boat. The gears serve to give higher torque at low vehicle speed or to give a change in torque but do not affect the horsepower or actual running of the engine. From the record we are convinced that a transmission, though in this case

an integral part of the engine as imported, is not an essential part of an engine.

This court in Servo-Tek Products Co. v. United States, 416 F.2d 1398, 57 CCPA 13, C.A.D. 969 (1969), held that an item consisting of an electric motor and a gear train, fastened together to form a single operating suit, was "more than" a motor. More recently, in United States v. ACEC Electric Corp., 474 F.2d 1009, 60 CCPA ——, C.A.D. 1091 (1973), a similar result was reached in a case where the imported item was an electric motor with which was integrally housed a clutch mechanism. In combination, these elements formed a single operating unit. In operation, the motor ran continuously while the clutch mechanism functioned to allow a drive pulley to be engaged and disengaged. Although the sole use to which the unit was put was as a power source for an industrial sewing machine, it was held to be "more than" a motor.

We think those decisions dictate a reversal of the lower court in this case. In each of those cases a basic engine, specifically an electric motor, was modified by the addition of components not essential to a basic engine. In ACEC, as is true here, the added components were integrated with the engine and dedicated it to a particular purpose, but these special features did not preclude a determination that it was "more than" an electric motor. We see no room for a different conclusion here.

In the instant case the engines are used as marine auxilaries to power sailboats. The transmission as a clutching mechanism for forward and reverse gears serves to adapt the basic engine to its intended use as part of a sailing vessel. Therefore, we think that the addition of transmissions to those engines made them "more than" compression-ignition engines for tariff purposes.

Accordingly, we *reverse* the decisions and judgments of the Customs Court and remand with directions that judgments be entered affirming the classifications under item 696.15, TSUS.

Reversed.