(C.D. 4571)

EATON MANUFACTURING CO. ET AL. *v.* UNITED STATES

Court Nos. 65/13083, 67/17604, 67/70250(A), 68/46572

(Decided on remand [C.A.D. 1076] December 5, 1974)

*Sharretts, Paley, Carter & Blauvelt* (*M. Barry Levy* of counsel) for the plaintiffs.

*Carla A. Hills*, Assistant Attorney General (*John A. Gussow*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: These cases involving marine engines and outdrives imported at Seattle and New York from Sweden are before this court a second time following the decision of the Court of Customs and Patent Appeals in *Eaton Manufacturing Co., et al.* v. *United States*, 60 CCPA 23, C.A.D. 1076, decided November 30, 1972 on cross-appeals from our decision in *Eaton Manufacturing Co. et al.* v. *United States*, 66 Cust. Ct. 293, C.D. 4207 (1971). In C.A.D. 1076, the appeals court, under suit No. 5476, reversed our dismissal of these protests which had been based on jurisdictional grounds, and remanded them, holding that we had juridsiction to decide the protests on their merits.

In protest 65/13083, involving a Seattle entry, the engines were classified under TSUS item 660.44 as internal combustion engines; and the outdrives were classified under TSUS item 696.15 as "Parts of yachts or pleasure boats owned by a resident of the U.S. or brought into the U.S. for sale or charter to a resident thereof." In the protest the importer initially claimed that the outdrives should be classified as an entirety with the engines under item 660.44. By way of amendment to the protest the importer now claims, among other things, that the outdrives should be classified under TSUS item 680.45 as fixed ratio speed changers.

In protests 67/17604, 67/70250(A), and 68/46572, involving New York entries, the engines and outdrives were classified as entireties under item 696.15 as parts of yachts or pleasure boats. The importer claims, among other things, either in the initial protests or by way of amendment that the merchandise is classifiable as separate entities—the engines under item 660.44 and the outdrives under item 680.45.

The case is submitted upon the record as originally made. The entry papers* show that an equal number of engines and outdrives were imported in each shipment, and, except as to the entry covered by protest 65/13083, were invoiced at a single unit price. However, the testi-

---

* Entry No. 958584 of protest 67/17604 is not before the court, and is said to be missing.

mony indicates that engines and outdrives are independent. That is, an engine may be imported and used with various outdrives or an outdrive may be imported and used with various engines. The two articles are not physically connected when imported, and they are usually not imported in equal numbers. Several of the witnesses agreed that an estimated 90% of imported outdrives and engines are used in the manufacture of pleasure boats with the remainder being used in various types of commercial boats and naval vessels.

The imported merchandise is sold to boat manufacturers. The engine is the source of power for the propulsion of the boat. And the outdrive functions as a transmission.

It is to be noted that classification of the involved merchandise at the port of Seattle differed from that made at the port of New York. And this variance is significant in the light of the defendant's position respecting plaintiffs' claims herein. At Seattle the collector of customs treated the engines and outdrives as separate entities, and considered the "and parts thereof" provision of item 696.15 to be applicable only to parts of foreign-built yachts and pleasure boats. At New York the regional commissioner of customs treated the engines and outdrives as an entirety, and did not consider the parts provision of item 696.15 to be limited to parts of foreign-built yachts and pleasure boats. The defendant contends that the classification reflected in the New York entries represents the proper classification of the engines and outdrives in issue.

The competing tariff provisions referred to herein read as follows:

[Classified]

> Yachts or pleasure boats, regardless of length or tonnage, whether motor, sail, or steam propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yachts or boats are brought into the United States under their own power; and parts thereof:
> Yachts or pleasure boats:

|  |  |  |  |  |
|---|---|---|---|---|
| * | * | * | * | * |

696.15    Parts _____    12%  ad  val.
10.5% ad val.

[Claimed]

|  |  |  |  |  |
|---|---|---|---|---|
| * | * | * | * | * |

Gear boxes and other speed changers, and parts thereof:

680.45    Fixed ratio speed changers * * * and parts thereof_____    9% ad val.
8% ad val.

With respect to the scope of item 696.15, our appeals court has ruled in C.A.D. 1076, under suit No. 5478 involving importations of out-drives only, that the "and parts thereof" provision of item 696.15 is not limited to parts of foreign-built yachts and pleasure boats.

With respect to the entireties issue, it is clear from the evidence noted herein that the engines and outdrives are separate entities. And apart from the evidentiary facts noted it was brought out in the tes-timony that the engines and outdrives are supported by different parts of a boat in which they are installed—the engine by structural mem-bers, and the outdrive by the transom. Thus, apparently the only connection that is made between the engine and the outdrive in appli-cation is some sort of a coupling of their drive shafts. And this cou-pling is insufficient to destroy the individual character of each article. See and compare *Columbia Shipbuilding Co. et al.* v. *United States*, 11 Ct. Cust. Appls, 281, 283, T.D. 39085 (1922).

A different conclusion might be feasible had it been shown that the engines and outdrives were imported with a common base to support them. See TSUS, Schedule 6, Part 4, headnote 3. But as the record stands no basis exists for concluding that the engines and outdrives should be treated as an entirety. Consequently, we are of the opinion that the collector at Seattle was correct in treating the engines and outdrives as separate entities.

Inasmuch as the evidence at bar compels the conclusion that the engines and outdrives in issue are separate entities for tariff purposes, the holding of our appeals court in C.A.D. 1076 under suit No. 5478 is dispositive of the remaining issues in the case insofar as outdrives are concerned. [And there appears to be no dispute that the engines *per se* are classifiable under item 660.44 once their status as separate articles is determined.] In C.A.D. 1076 not only did our appeals court hold that the outdrives are classifiable under the parts provision of item 696.15, but that court also held that the outdrives were more properly classifiable under item 680.45 as claimed herein. The court said at page 33 in 60 CCPA:

> * * * Power transmission may occur without speed change, but speed change necessarily includes power transmission. We think it clear from the testimony and exhibits that the outdrives are fixed ratio speed changers, and we therefore hold them to be properly classifiable under item 680.45 TSUS. Since that provision is relatively more specific than either 696.15 or item 678.50, it is the correct classification.

In view of the holding in C.A.D. 1076 under suit No. 5478, plain-tiffs' claim for classification of the outdrives under item 680.45 is sustained. With respect to protests 67/17604, 67/70250(A), and 68/46572 plaintiffs' claim for classification of the engines under item 660.44 is also sustained. However, inasmuch as no separate values were

returned in the appraisements for the engines and outdrives the subject of protests 67/17604, 67/70250(A), and 68/46572, the appraisements and ensuing liquidations underlying these protests are null and void.

Judgment will be entered herein accordingly.