**COMPUTIME, INC., Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Appeal No. 85–1050.**

United States Court of Appeals, Federal Circuit.

Sept. 11, 1985.

Margaret H. Sachter, Soller, Singer & Horn, of New York City, argued for appellant. With her on the brief was Sherry. L. Singer.

Jerry P. Wiskin, Commercial Litigation Branch, Dept. of Justice, of New York City, argued for appellee. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, Atty. In Charge, Intern. Trade Office, New York City.

Before MARKEY, Chief Judge, DAVIS and SMITH, Circuit Judges.

DAVIS, Circuit Judge.

Computime, Inc. appeals from a decision of the United States Court of International Trade (CIT), 601 F.Supp. 1029, granting the Government's motion to dismiss the complaint for lack of jurisdiction. The CIT ruled that Computime's protest following the Customs Services' reliquidation of imported watches was invalid, and therefore could not form the basis for a suit. The parties agree with the CIT's legal conclusion that that court has no jurisdiction over this type of case absent a valid protest, *see* 28 U.S.C. § 1581(a) (1982) (granting the CIT jurisdiction to review the Customs Service's denial of a valid protest); the parties contest only the viability of the protest in this case. Because we agree with the CIT that Computime's protest was statutorily barred, we affirm.

## I.

In November 1981 and January 1982 Computime imported a quantity of liquid crystal display (LCD) watches composed of a watch module enclosed in a case and attached to a watchband. Some of the watches had plastic cases and bands, while others were metal. The Customs Service (Customs) initially classified the modules and cases under item 715.05, Tariff Schedules of the United States (TSUS), which requires assessment of duties separately on watch cases and the watch movements under the specific provisions for each. Customs classified the modules under item 716.183 ("watch movements, etc.") and the cases under item 720.28 ("watch cases and parts thereof"). The bands were classified according to whether they were metal or plastic under items 740.34 ("watch bracelets") and A774.559 ("articles not specially provided for, of rubber or plastic"), respectively.

Computime filed a timely protest following liquidation of each entry. The protests stated:

(1) We wish to protest the classification of watch modules under 716.18 of the TSUSA.

(2) We feel the proper classification is 688.45 of the TSUSA.[1]

(3) We wish to refer to Customs Court No. 80–10–01666 which is supportive of our claim.

The reference to the Customs Court case in paragraph 3 of Computime's protest is to *Texas Instruments v. United States*, 518 F.Supp. 1341 (CIT 1981), *aff'd*, 673 F.2d 1375 (CCPA 1982). There, the court ruled that the modules of LCD watches are not "movements" as the term is used in item 716.18, and ordered that Customs classify the modules under 688.45.

Customs allowed Computime's protest. It reliquidated the entries, and "items entered under TSUSA numbers 716.18 [the modules] and 720.24 [*sic*, 720.28—the cases]" were "classified under item number 688.45 @ $ 4.9%." The Customs Service thus

1. Pursuant to Executive Order 12371, 47 Fed. Reg. 30449 (1982), item 688.45 has been renumbered 688.36. For simplicity we refer only to the older designation.

reclassified the modules *and* the cases, even though paragraph 1 of Computime's protest refers only to watch modules. In its decisions (dated June 11 and 29, 1982), Customs also specifically referred to the *Texas Instruments* case. The entries were reliquidated in July 1982.

Computime filed a second set of protests on September 8, 1982. In pertinent part, the protest stated:

We hereby protest the classification of the watchbands imported as an integral part of LCD electronic watches under TSUS # 740.350. [*Sic*] Since we believe this should be considered an entirety part [*sic*] of Electronic Items under TSUS # 688.455.

These protests again referred to the *Texas Instruments* decision. Customs denied these protests in October 1982.

Computime then filed a timely summons in the Court of International Trade challenging Customs' denial of the second protest. A complaint followed alleging: that Customs rulings in other cases required that watchbands be considered a part of watches and classified under the same TSUS item as the rest of the watch; that "[i]nherent in the importer's protest of the classification of the solid state modules [the first protest]" was the claim that these watches should be classified as one commercial unit under a single tariff item; and that Customs, when it reclassified the modules *and* the cases after the first protest, recognized the watches as one commercial entity.

The Court of International Trade dismissed the action for want of jurisdiction, ruling that the second protest was invalid. The court considered two possible alternatives. First, "If, as plaintiff asserts, the protests of the 'watch modules' contested the classification of the metal watch bands, then plaintiff's remedy was to file an action in this Court within 180 days ... 28 U.S.C. § 2636(a) ... not file another set of protests." On the other hand, if Computime

had not contested the classification of the watchbands in the first protest, then the second protest was invalid under section 514(d) of the Tariff Act, 19 U.S.C. § 1514(d) (1982),[2] which provides:

The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the customs officer upon any question not involved in such reliquidation.

The court added that "[i]f plaintiff could have made such protests [of Customs' classification of the watchbands] at that time [in its first protest], it was required to make them."

## II.

Prior to 1930, the customs laws contained no provision for drawing to a close the administrative process by which entries are liquidated. Serial protests challenging different aspects of a liquidation were common. Congress recognized this problem, and considered the language now contained in section 514(d), set forth *supra*, to be a proper remedy. The only legislative history on section 514(d) emphasizes the provision's underlying goal of finality:

Under the existing law, it has been held that a reliquidation opens up the whole entry to protest. It is thus possible for an importer having an entry with a large number of items to protest one item at a time and thereby keep the entire entry from final liquidation indefinitely. Your committee proposes the imposition of a limitation that reliquidation of an entry will not open the entry to protest upon any question not involved in the liquidation.

H.Rep. No. 7, 71st Cong., 1st Sess. 179 (1929). Thus, while Computime refers broadly to "the right to protest under section 514(d)," Congress clearly intended the provision to be "a limitation" on, and not a conferral of, an importer's right to protest Customs' decision.

**2.** In the various amendments to the Tariff Act since 1930, the subsections to section 514 have been renumbered. The language now con-

tained in section 514(d) has remained the same throughout.

Those cases which have construed section 514(d) have also viewed the provision as a limitation on the importer's right to file successive protests. In *F.W. Woolworth Co. v. United States*, 26 CCPA 157 (1938), one of our predecessor courts considered the effect of this provision in a case involving the entry of beach balls, tennis racquets and earthenware. After liquidation, Customs noticed an error in its calculation of the amount of earthenware, and reliquidated the entry. The importer filed a timely protest, challenging the classifications of the balls and racquets. The court concluded that the language now in section 514(d) barred the protest:

> We think one of those things Congress had in mind when it added the new language in section 514 above quoted was exactly this kind of situation. One of the intended purposes of the legislation was to enable the customs authorities to correct error and *leave these corrections subject to protest but not to open up for protest ... questions which could have been protested within sixty days from the prior liquidation.*

*Id.* at 161 (emphasis added). In short, the court emphasized that a protest following reliquidation can contest only those points raised by the Customs Service's decision on the initial protest.

A recent decision of this court dealt with the same issue in slightly different circumstances, and affirmed (on the basis of the opinion of the CIT) dismissal of a suit challenging Customs' denial of a protest following reliquidation. *Audiovox Corp. v. United States*, 764 F.2d 848 (Fed.Cir.1985), *affirming* 598 F.Supp. 387 (CIT 1984). In that instance, the importer initially protested the classification of certain radios. Following reliquidation, the importer sought a third liquidation with no assessed duties under the Generalized System of Preferences. The CIT dismissed the action, because the second protest was invalid:

> To allow an importer to raise a claim in the protest of a reliquidation not raised in the protest to the liquidation, and which could have been raised there, would drain 19 U.S.C. § 1514(c)(1) and (d)

of all meaning. The number of possible protests of a single entry would be limited only by the importer's imagination; an endless series of reliquidations could result.

598 F.Supp. at 389. *Accord: Pistorino & Co. v. United States*, 71 Cust.Ct. 166 (1973); *Wilshire Industries, Ltd. v. United States*, 64 Cust.Ct. 84 (1970); *Moses Harvey Brotman v. United States*, 27 Cust.Ct. 251 (1951).

Computime takes umbrage at the CIT's conclusion that a protest of reliquidation is invalid if it raises issues that could have been brought up during the initial protest but were not. This formulation, we are told, reverses the statute's point of view; Computime insists that the question is not whether the importer failed to raise the issue in the initial protest, but whether Customs' decision on the original protest opened up the initial liquidation sufficiently to allow a contest of the issues raised in the second protest.

The answer to Computime's assertion that its failure to raise the watchband issue in the initial protest is wholly irrelevant is supplied by the CCPA's decision in *Woolworth* and the CIT's decision (affirmed by this court) in *Audiovox*. See the passages set forth *supra*, which make it clear that one cannot simply reserve for later protest a separate aspect of the same entry.

■ Another answer to the importer's position is that the Customs' decision in the original protest did *not* open up the initial liquidation in the way Computime seeks now to benefit from (*i.e.*, with respect to the watchbands). Of course, if Customs on its own initiative expands the scope of a protest and raises issues not posed by the importer (as it did here when it reclassified the watch *cases*), then this new aspect of Customs' decision, which was not protested originally, can lead to a proper reprotest. That is because the second protest may raise issues "involved in [the] reliquidation," as the statute clearly states. Here, on the other hand, Customs' reliquidation decision did not mention or cover watch-

bands or attempt in any way to deal with them—and it is clear that Computime did not in fact include watchbands in its original protest (except, conceivably, by invoking the doctrine of entireties, discussed in Part III, *infra* ). It follows that the second liquidation did not at all involve the watchbands as a separate item, and that item was not opened up for further protest.

The interplay between sections 514(c)(1) and 514(d) is instructive. The former provision states, "Only one protest may be filed for each entry of merchandise"; the latter restricts reprotests to issues "involved" in the initial protest. As the CCPA stated in *Woolworth*, the purpose of section 514(d) is to leave *"these corrections [i.e.,* Customs' decision on the initial protest] subject to protest" and no more. 26 CCPA at 161 (emphasis added). Thus, Computime cannot file a new protest both because it had already filed one protest and because Customs' decision in that protest did not open up the subject of watchbands.

### III.

■ Computime seeks nevertheless to prevail on the basis of the customs law doctrine of entireties. This principle is a corrollary to the fundamental theory of customs jurisprudence that an imported article should be classified according to its true commercial character. The doctrine states that, if an entry consists of parts which, although unjoined, when assembled form an article different from any of the parts, then the proper classification is the one for the whole article and not for the parts separately. The reverse is also true, as the court noted in *Donalds, Ltd. v. United States*, 32 Cust.Ct. 310, 314–15 (1954):

> In the application of the [entireties] doctrine, the two possible situations which may arise are (1) where physically

separate entities are imported in one importation, and the question is whether or not they may be considered as a single commercial unit and classified under the tariff provision for that unit, or (2) where a unit is imported, and the question is whether or not the parts thereof, rather than the unit, may each be individually classified under tariff provisions applicable to the parts.

*See generally* R. Sturm, A Manual of Customs Law 288–96 (1974).

Computime advances two reasons why the doctrine of entireties saves it from section 514(c)(1)'s and section 514(d)'s bar against serial protests. First, we are told that Computime's initial protest implicitly raised the entireties issue; that Customs denied this entireties argument in its decision on the first protest; and that the entireties issue was thus "involved" (as the statute requires) in the first protest, thereby permitting a second protest. If its original protest did not raise the entireties issue, then Computime's second argument is that Customs itself drew the entireties issue into the protest when it reclassified the watch cases (along with the modules) on its own initiative. The conclusion drawn is that the entireties issue became "involved" in the protest at this juncture, and was thus a proper ground for a second protest.[3]

■ The first argument is readily answered. Nothing in the original protest provided any indication that Computime requested classification of the watches as an entirety. Computime relies on *Mattel, Inc. v. United States*, 377 F.Supp. 955 (Cust.Ct. 1974) for the proposition that protests are to be liberally construed.[4] This does not, however, mean that protests are akin to notice pleadings and merely have to set forth factual allegations without providing any underlying reasoning. The Tariff Act

---

**3.** In considering these arguments we do not express any view on the merits of Computime's entirety arguments. We consider only whether the issue was "involved" in the protest, thereby allowing reprotest.

**4.** The Customs Court stated in *Mattel:*

> [H]owever cryptic, inartistic or poorly drawn a communication may be, it is sufficient as a protest if it conveys enough information to apprise officials of the importer's intent and the relief sought.
>
> 377 F.Supp. at 960.

specifically requires in section 514(c)(1) that a protest set forth "distinctly and specifically each decision [of Customs] as to which protest is made." "A protest must be sufficiently distinct and specific to enable the Customs Service to know what is in the mind of the protestant." *United States v. Parksmith Corp.*, 514 F.2d 1052, 1057 (CCPA 1975); *see also, Eaton Mfg. Co. v. United States*, 469 F.2d 1098 (CCPA 1972). Computime in no way revealed in its first protest that it wished Customs to apply the entireties doctrine, or that it contested Customs' initial failure to do so.

Moreover, as the CIT noted, section 514(c)(1) allows only one protest "for each entry of merchandise." If Computime did raise the issue of entireties in the first protest, and if it was dissatisfied with Customs' treatment of that issue, it could have filed a summons in the CIT, but it could not raise the issue again in a second protest. This argument is therefore self-defeating.

■ Nor can we accept the position that Customs raised the entireties issue when it decided to reclassify the cases along with the modules. Customs gave no indication that it intended to invoke the doctrine with regard to these entries. The Government contends that Customs included the watch cases in its decision by mistake. Another possibility is that Customs noted the second portion of the *Texas Instruments* decision, in which the court determined that watches and cases together should be classified under item 688.45, TSUS. 518 F.Supp. at 1343–46. Customs, on this view, merely gave Computime the full benefit of *Texas Instruments*, instead of just reclassifying the modules as Computime had requested.[5] Customs thereby raised the issue of the proper classification of the cases themselves, but did not draw the doctrine of entireties into the matter.

For these reasons we conclude that the decision of the CIT dismissing the instant case for lack of jurisdiction must be affirmed.

AFFIRMED.

---

5. The fact that Customs in another case decided to treat watch modules, cases and bands as an entirety provides no reason to find that it intended to do so here. Computime never properly raised the entireties issue, and we conclude that Customs did not either. We cannot consider the merits of the issue if Computime did not properly invoke the jurisdiction of the court.